# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DORA GUTIERREZ,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>MICHAEL J. ASTRUE, Commissioner<br>of Social Security,<br><br>　　　　　Defendant. | 1:09cv0146 DLB<br><br>ORDER REGARDING PLAINTIFF'S<br>SOCIAL SECURITY COMPLAINT |

## BACKGROUND

Plaintiff Dora Gutierrez ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for disability insurance benefits and supplemental security income pursuant to Titles II and XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.

## FACTS AND PRIOR PROCEEDINGS[1]

Plaintiff filed her applications on May 26, 2005, alleging disability since June 7, 2002, due to a heart condition, arthritis, anxiety, depression, headaches and a hearing loss. AR 114-

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1

116, 147-156. After Plaintiff's applications were denied initially and on reconsideration, she requested a hearing before an Administrative Law Judge ("ALJ"). AR 24-25, 26-31, 34-38, 39-43. On April 26, 2007, ALJ Christopher Larsen held a hearing. AR 44-85. He denied benefits on May 24, 2007. AR 9-19. The Appeals Council denied review on November 24, 2008. AR 5-7.

Hearing Testimony

ALJ Larsen held a hearing on April 16, 2007, in Fresno, California. Plaintiff appeared with her attorney, Melissa Proudian. Vocational expert ("VE") Cheryl Chandler also appeared and testified. AR 44.

Plaintiff testified that she was 59 years old at the time of the hearing. She was 5 feet tall and weighed 157 pounds. She has been gaining weight for the past two or three years, when her depression worsened. AR 51. Plaintiff was not married and lived by herself. AR 52. Plaintiff has a driver's license and drives about once or twice a week. AR 52-53. She completed the eighth grade. AR 53.

Plaintiff last worked in 2001 or 2002 as an assistant cook. AR 55. She stopped working after she began having problems with her legs and heart. AR 57-58. Plaintiff testified that she cannot work now because she can't take care of herself and could not attend work regularly. AR 58.

Plaintiff explained that she still has pain in her legs from arthritis and an arrhythmia in her heart. AR 59. She also has arthritis in her hands, arms, feet and neck. She has constant pain in her back, which she rated at a 7 or 8 out of 10, without medication. AR 62. She rated the pain in her legs as a 10, without medication. AR 63. Plaintiff just started pain medication the week before the hearing and it seems to help her sleep. AR 63. With medication, she rated the pain in her back at a 4 or 5 and the pain in her legs at a 3. AR 64.

Her medications make her tired and lose interest and also cause dizziness and an upset stomach. AR 64. Plaintiff lays down to rest everyday. She explained that she could "go with the pain" for about an hour before needing to relax and sit or lay down for at least two hours. AR 65. Sometimes she can't even lay down and rest because the pain makes it difficult. AR 70. She

tries to get up and do things for about three or four hours total during the day. AR 66. Plaintiff thought she could sit for about 45 minutes at one time and could stand for about 25 minutes at one time. AR 67. She estimated that she could walk about two or three blocks and lift less than 10 pounds. AR 68.

Plaintiff testified that she feels depressed and hopeless everyday and sometimes feels like she'd rather die. Going to church makes her feel better, though it is hard for her to motivate herself to go. AR 71. She often doesn't feel like doing anything because she hurts and doesn't feel well. AR 72. Plaintiff used to enjoy sewing and playing with her grandchildren, but she can no longer tolerate "kids' noises." AR 73. She no longer drinks alcohol to numb herself because she has found other things to do since going to church, such as meditating and reading the Bible. AR 74. Plaintiff testified that she stopped drinking towards the end of 2005. AR 74.

Plaintiff also has symptoms related to her heart, including chest pain, pain and numbness in the left side of her body and tingling in her arm. AR 75. She experiences these symptoms every day, sometimes for the entire day. AR 76, 77. Plaintiff takes medication and tries to lay down and relax when she experiences these symptoms. AR 76. She has been trying to see a cardiologist but cannot pay for it. AR 77.

For the first hypothetical, the ALJ asked the VE to assume a person of Plaintiff's age, education and work experience. In addition to regular breaks, this person would require at least one additional break of one hour. The VE testified that this person could not perform any work. AR 80.

For the second hypothetical, the ALJ asked the VE to assume a person who could stand and walk for two hours total and could sit for a total of four hours. The VE testified that this person could not perform any work. AR 80.

For the third hypothetical, the ALJ asked the VE to assume a person who was limited to understanding, remembering and carrying out simple, repetitive tasks. This person could not perform Plaintiff's past work, but could perform the full range of unskilled work. AR 81.

Plaintiff's attorney asked the VE to assume a person who would have difficulty accepting instruction of supervisors and interacting with coworkers and the public, performing work

activities on a consistent basis and being able to maintain regular attendance in the workplace and complete a normal workday without interruptions from a psychiatric condition and dealing with the usual stressors encountered in competitive work. The VE testified that this person could not perform any work. AR 81-82.

Medical Record[2]

On May 14, 2004, Plaintiff told her physician at Visalia Family Practice that she was anxious and depressed. She complained of headaches, mood swings, prolonged sleeping, trouble coping and a poor memory. Plaintiff was emotional when she discussed her divorce. She was instructed to switch her medication to Zoloft. The progress note indicated that she was "certified unable to work." AR 276.

On September 15, 2004, Plaintiff saw Zaky Moussa, M.D., for a consultive examination. Her chief complaint was depression and she reported palpations and chest pains triggered by anxiety. Plaintiff denied alcohol intake. Plaintiff's physical examination was normal. On mental status examination, Plaintiff was alert and oriented times three. Her speech was normal and her memory was intact. Dr. Moussa diagnosed anxiety and a history of depression. Plaintiff had no physical abnormalities and Dr. Moussa opined that Plaintiff could work full time with normal breaks. AR 281-284.

On October 7, 2004, Plaintiff saw Mary K. McDonald, Ph.D., for a consultive psychiatric evaluation. Plaintiff reported stress and depression associated with her marriage and eventual divorce, and anxiety and fear over cardiovascular difficulties. Dr. McDonald noted that Plaintiff had been off work three years and had no mental health history. Plaintiff reported "occasion[al]" abuse by an uncle at ages 7 and 8 and denied using any substances. AR 287-288.

On mental status examination, her cognitive abilities appeared average. Plaintiff was oriented to person and place but seemed to have difficulty with time, asking if it was 1999 as opposed to 2004. Plaintiff was very anxious and her anxiety was affecting her ability to remember short and long term events, though she was able to recall time and place more

---

[2] Plaintiff's claims relate to her mental impairment and therefore only pertinent portions of the medical record will be summarized.

4

accurately after calming down.  Plaintiff was anxious and nervous throughout the examination.  She denied suicidal ideations but reported that she is useless and alone, fearful of dying, and frightened about her future.  Plaintiff's mood was disrupted despite taking Prozac.  AR 289-290.

Dr. McDonald noted that Plaintiff appeared to be significantly depressed, with no history of substance abuse.  Her depression was evidenced by appetite and sleep disruption, lethargy, hopelessness and bouts of tearfulness.  Dr. McDonald diagnosed major depressive disorder, recurrent, severe, without psychotic features, and a learning disorder (in terms of reading), not otherwise specified.  AR 290.  She indicated that Plaintiff's prognosis was poor.  Dr. McDonald opined that Plaintiff would have difficulty working, even in simple and repetitive labor.  Her social functioning, concentration and persistence was disrupted and she would have difficulty arriving and staying at work and interacting appropriately without becoming depressed.  Dr. McDonald noted that her depression would continue without treatment or intervention.  AR 290-291.

On October 29, 2004, State Agency physician Glenn Ikawa, M.D., opined that Plaintiff had moderate difficulties in understanding, remembering and carrying out detailed instructions.  She was also moderately limited in her ability to interact appropriately with the general public.  AR 296-297.  Dr. Ikawa believed that Plaintiff could perform simple, repetitive tasks and complete an eight hour workday.  She could also interact and adapt, but her contact with the public should be limited because of anxiety.  AR 298.

In rating her functional limitations, Dr. Ikawa opined that Plaintiff would have mild to moderate difficulty in maintaining social functioning, and mild difficulties in maintaining concentration, persistence and pace.  AR 313.

On August 20, 2005, Plaintiff saw Chris Saindon, Ph.D., for a consultive psychiatric evaluation.  Plaintiff reported that she could not function and that most days, she was depressed and could not get out of bed.  She would rather sleep than get up and be around people.  Plaintiff reported that she attempted suicide in 1985 by driving over a bridge.  AR 317.  Plaintiff further reported that she has been drinking alcohol "more and more" lately because she likes how it numbs her feelings.  AR 318.

5

On mental status examination, Plaintiff's mood was dysthymic and her affect was full and appropriate. Her speech and thought process were normal. Plaintiff was able to remember 4/4 words in three minutes, with prompting on one word, she knew 3/3 past presidents and she knew the governor and capital of California. She was unable to perform simple addition. Plaintiff performed a three-step command well. AR 319.

Dr. Saindon diagnosed major depressive disorder, moderate, without psychotic features, and alcohol abuse. He believed that the likelihood of recovery, with treatment, was good, but that she would not likely improve within the next 12 months. She appeared to have both chronic and acute problems. Dr. Saindon opined that Plaintiff could handle her own funds. Plaintiff could perform simple and repetitive tasks, but would have difficulty with more detailed tasks. She would also have some difficulty accepting instructions from supervisors, interacting with coworkers and the public, performing work activities on a consistent basis, maintaining regular attendance and completing a normal workday or workweek without interruptions from a psychiatric condition, and dealing with the usual stressors encountered in competitive work. AR 319-320.

On September 13, 2005, Dr. Ikawa opined that Plaintiff had moderate difficulties in understanding, remembering and carrying out detailed instructions. She was also moderately limited in her ability to interact appropriately with the general public. Dr. Ikawa believed that Plaintiff could understand and remember very short and simple instructions, maintain attention and concentration for two hour increments and perform at a consistent pace, interact appropriately with supervisors and coworkers, but not with the general public, and respond appropriately to changes and hazards in the workplace. AR 321-323.

In rating her functional limitations, Dr. Ikawa opined that Plaintiff would have mild to moderate difficulty in maintaining social functioning, and mild difficulties in maintaining concentration, persistence and pace. AR 338.

Plaintiff continued to receive treatment for depression and anxiety, as well as physical ailments, from the Family Health Care Network through April 2007. Though she complained of increased fatigue on two occasions, she most often reported that she was doing well and had no

complaints. AR 343, 349, 357, 367, 375, 384, 569. In February 2007, her depression and anxiety were described as stable. AR 523. In March 2007, her treating physician, Monica Manga, M.D., noted that Plaintiff had no significant past medical history. AR 521.

ALJ's Findings

The ALJ determined that Plaintiff suffered from the severe impairment of major depressive disorder and alcohol abuse. He further determined that Plaintiff retained the residual functional capacity ("RFC") to understand, remember and carry out simple one or two step job instructions, though she could only tolerate limited contact with the general public. Based in part on the VE's testimony, the ALJ concluded that Plaintiff could not perform her past work, but could perform a significant number of jobs in the national economy. AR 18.

## **SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen,* 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994). Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of her disability; (2) has an impairment or a combination of impairments that is considered "severe" (major depressive disorder and alcohol abuse) based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) cannot perform her past relevant work, but (5) retains the RFC to perform a significant number of jobs. AR 14-19.

Here, Plaintiff argues that the ALJ (1) failed to sustain the Commissioner's burden at step five; (2) failed to properly evaluate the medical evidence; and (3) failed to properly evaluate her credibility.

## DISCUSSION

A.  Step Five Determination

Plaintiff argues that the ALJ failed to carry the Commissioner's burden at step five because the hypothetical questions posed to the VE did not contain a limitation to simple one or two step tasks with limited contact with the general public.

"Hypothetical questions posed to the vocational expert must set out all the limitations and restrictions of the particular claimant . . . ." *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir.1988). The testimony of a VE "is valuable only to the extent that it is supported by medical evidence." *Sample v. Schweiker*, 694 F.2d 639, 644 (9th Cir. 1982). The VE's opinion about a claimant's RFC has no evidentiary value if the assumptions in the hypothetical are not supported by the record. *Embrey*, 849 F.2d at 422.

Here, the ALJ found that Plaintiff had the RFC to understand, remember and carry out simple one or two step job instructions, with "only limited contact with the general public." AR 15. Plaintiff correctly notes that the hypothetical adopted by the ALJ to sustain his burden at step five only included the limitation to simple, repetitive tasks. AR 81. In response to this question, the VE testified that a person with this limitation could perform the full range of unskilled work. AR 81.

The omission, however, does not undermine the sufficiency of the hypothetical question. SSR 85-15 states that where there are no exertional impairments, "unskilled jobs at all levels of exertion constitute the potential occupational base for persons who can meet the mental demands of unskilled work." The basic mental demands of unskilled work include the abilities to understand, carry out, and remember simple instructions, respond appropriately to supervision, coworkers, and usual work situations, and deal with changes in a routine work setting. SSR 85-15. Only a "substantial loss of ability to meet any of these basic work-related activities" significantly erodes the occupational base. SSR 85-15. As the ALJ found no substantial limitations in these areas, he did not err in concluding that Plaintiff could perform unskilled work. In other words, unskilled work accommodates a need for limited contact with the general public. *See Langford v. Astrue*, 2008 WL 2073951, *7 (E.D.Cal. 2008) (ALJ did not err in not using a VE because unskilled work "accommodated his need for 'limited contact with others.'"); 20 C.F.R. § 404.1568 (explaining that "[f]or example, . . . jobs [are] unskilled if the primary duties are handling, feeding and offbearing . . ., or machine tending" and that "skilled jobs may require dealing with people."); SSR 85-15 (unskilled jobs "ordinarily involve dealing primarily with objects, rather than with data or people.").

In her reply, Plaintiff contends that the Defendant's reliance is nothing more than post hoc rationalization. The explanation of a widely accepted underlying assumption, however, is not a post hoc rationalization for the ALJ's decision.

Based on the ALJ's RFC, the step five finding was supported by substantial evidence and free of legal error.

B.  Evaluation of Medical Evidence

Plaintiff next argues that the ALJ failed to set forth specific and legitimate reasons for rejecting the opinions of the two consulting physicians in favor of the opinion of the State Agency physician.

The opinion of an examining physician is entitled to greater weight than the opinion of a nonexamining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir.1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir.1984). As is the case with the opinion of a treating physician, the Commissioner must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer*, 908 F.2d at 506. And like the opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir.1995).

The opinion of a nonexamining physician cannot, by itself, constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician. *Pitzer*, 908 F.2d at 506 n. 4; *Gallant*, 753 F.2d at 1456. In some cases, however, the ALJ can reject the opinion of a treating or examining physician, based in part on the testimony of a nonexamining medical advisor. *See eg., Magallanes v. Bowen,* 881 F.2d 747, 751-55 (9th Cir.1989); *Andrews*, 53 F.3d at 1043; *Roberts v. Shalala*, 66 F.3d 179 (9th Cir.1995). For example, in *Magallanes*, the Ninth Circuit explained that in rejecting the opinion of a treating physician, "the ALJ did not rely on [the nonexamining physician's] testimony alone to reject the opinions of Magallanes's treating physicians...." *Magallanes*, 881 F.2d at 752 (emphasis in original). Rather, there was an abundance of evidence that supported the ALJ's decision: the

ALJ also relied on laboratory test results, on contrary reports from examining physicians, and on testimony from the claimant that conflicted with her treating physician's opinion. *Id*. at 751-52.

There are four medical opinions in the medical records. Two were rendered by consulting examiners McDonald and Saindon. The other two were rendered by Dr. Ikawa, a State Agency physician. While McDonald and Saindon differed in their opinions as to whether Plaintiff could perform simple, repetitive tasks, both believed that she would have some degree of difficulty in social functioning, maintaining consistent performance and attendance and interacting appropriately with coworkers and supervisors. Dr. Ikawa opined, on two different occasions, that Plaintiff could perform simple, repetitive tasks with only limited contact with the general public.

The ALJ chose to adopt Dr. Ikawa's opinion over those of Drs. McDonald and Saindon. AR 17. He explained that he gave the consultive examiners' opinions "little weight" because they were (1) inconsistent with Plaintiff's activity level; and (2) based heavily on Plaintiff's subjective complaints, which the ALJ deemed not credible. AR 17.

The ALJ first explained that the consultive examiners' limitations were inconsistent with Plaintiff's activity level, which, through her self-reports, includes personal care, attending church services, preparing simple meals daily, performing light cleaning and laundry, going outside daily, walking, driving, shopping in stores for 10-30 minutes, paying bills, counting change, handling a savings account and using a checkbook or money orders, reading, watching television occasionally and spending time with others weekly. AR 17, 71-72, 141-143, 162-164, 195-197. Plaintiff's daily activities are a valid area of examination in assessing the weight that should be given to a medical source, and the ALJ's conclusion was supported by substantial evidence in the record. 20 C.F.R. § 404.1527(d)(3).

The ALJ next explained that the consultive examiners' opinions were based heavily on Plaintiff's subjective complaints, which he found to be less than fully credible. Although an ALJ may reject a treating or examining source's opinion because it was based mainly on a claimant's subjective complaints, it was error to do so here. As discussed in the following section, the

ALJ's credibility analysis was not supported by substantial evidence and therefore cannot support the rejection of the consultive examiners' opinions.

This leaves the ALJ's citation to Plaintiff's daily activities as the only evidence, other than the contradictory opinions of Dr. Ikawa, properly used to discredit the opinions of the two consulting physicians. The Court finds that this is not sufficient evidence to discredit the two consultive opinions in favor of the nonexamining physician. *Magallanes*, 881 F.2d at 752 (abundance of evidence supported decision to adopt nonexamining physician opinion over that of examining physicians).

The ALJ's treatment of the medical opinions was not supported by substantial evidence and free of legal error. Remand will be discussed at the end of this decision.

C. Plaintiff's Subjective Complaints

Finally, Plaintiff argues that the ALJ failed to set forth legally sufficient reasons for rejecting her subjective complaints.

In *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007), the Ninth Circuit summarized the pertinent standards for evaluating the sufficiency of an ALJ's reasoning in rejecting a claimant's subjective complaints:

> An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional impairment. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.1989). However, to discredit a claimant's testimony when a medical impairment has been established, the ALJ must provide "'specific, cogent reasons for the disbelief.'" *Morgan,* 169 F.3d at 599 (quoting *Lester*, 81 F.3d at 834). The ALJ must "cit[e] the reasons why the [claimant's] testimony is unpersuasive." *Id.* Where, as here, the ALJ did not find "affirmative evidence" that the claimant was a malingerer, those "reasons for rejecting the claimant's testimony must be clear and convincing." *Id.*
>
> Social Security Administration rulings specify the proper bases for rejection of a claimant's testimony. . . An ALJ's decision to reject a claimant's testimony cannot be supported by reasons that do not comport with the agency's rules. *See* 67 Fed.Reg. at 57860 ("Although Social Security Rulings do not have the same force and effect as the statute or regulations, they are binding on all components of the Social Security Administration, ... and are to be relied upon as precedents in adjudicating cases."); *see Daniels v. Apfel,* 154 F.3d 1129, 1131 (10th Cir.1998) (concluding that ALJ's decision at step three of the disability determination was contrary to agency regulations and rulings and therefore warranted remand). Factors that an ALJ may consider in weighing a claimant's credibility include reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." *Fair,* 885 F.2d at 603; *see also Thomas,* 278 F.3d at 958-59.

Here, the ALJ began his analysis by finding that there were many inconsistencies in the medical record that detracted from Plaintiff's credibility. He first set forth what he believed to be Plaintiff's inconsistent statements regarding her alcohol use:

> For example, in terms of her substance abuse disorder, she told the consulting physician on August 20, 2005, that she drinks to numb her feelings; but she also told a rheumatologist that she did not drink at all. Likewise, Ms. Gutierrez told the Disability State Agency (DSA) physician she does not drink, then retracted the statement to admit she drinks occasionally, and finally denies she has ever had a drinking problem.

AR 17.

This description, however, misrepresents the evidence and fails to acknowledge the nature of a substance abuse disorder. First, while Plaintiff did tell the consultive examiner, in August 2005, that she drank to numb her feelings, she stated that she had been drinking "more and more lately." Her explanation wholly undermines the ALJ's comparison with what she told her rheumatologist during a 2001 appointment. The ALJ doesn't specify the date of the rheumatologist appointment, perhaps because it is unpersuasive to use a date four years prior to make this comparison, even without Plaintiff's August 2005 statement that her alcohol use increased "lately."

Insofar as the ALJ uses Plaintiff's December 2005 statements to the DSA to undermine her credibility, his conclusion is unsupported. Although Plaintiff initially stated that she did not drink alcohol, she immediately followed up her answer by truthfully stating that she does drink. AR 216. The ALJ also takes issue with the Plaintiff's description of her alcohol use as "occasional" and her denial that her drinking is a problem. To hold this against Plaintiff, however, completely ignores a hallmark of a substance abuser- that many do not see their use as a problem.

The ALJ next concludes that even though Plaintiff alleges disabling mental symptoms, she is not being followed by a psychologist or a psychiatrist. He states, "She is not undergoing any mental health counseling or psychotherapy, and is being prescribed psychotropic medication only by her primary physician." AR 17. While the ALJ is permitted to examine the extent of treatment in light of a claimant's allegations of severity, it is not a legitimate factor under these facts. First, it is questionable whether Plaintiff's treatment for depression and anxiety, which

13

consistently spanned almost three years, is rendered conservative or out of balance with her subjective complaints simply because the treatment was provided by a family practitioner.

Second, as Plaintiff points out, the Ninth Circuit has questioned the practice of discrediting a claimant with a mental impairment based on the failure to seek treatment. In *Nguyen v. Chater*, the court noted that the symptoms of depression are often not recognized, making "the fact that claimant may be one of millions of people who did not seek treatment for a mental disorder until late in the day" an improper basis for rejecting an examining physician's opinion. *Nguyen v. Chater,* 100 F.3d 1462, 1065 (9th Cir. 1996). In so holding, the court cited the Sixth Circuit's decision in *Blankenship v. Bowen,* where the court invalidated an ALJ's reasons for rejecting a claimant's assertions about his depression. "'[A]ppellant may have failed to seek psychiatric treatment for his mental condition, but it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.'" *Id.* (citing *Blankenship v. Bowen,* 874 F.2d 1116, 1124 (6th Cir.1989)).

The ALJ then moves on to an examination of Plaintiff's daily activities. *Fair*, 885 F.2d 603 (daily activities may be grounds for adverse credibility determination where claimant is able to spend substantial part of day engaged in pursuits involving the performance of physical functions that are transferrable to the work setting). As noted above, Plaintiff is able to perform personal care, attend church services, prepare simple meals daily, perform light cleaning and laundry, go outside daily, walk, drive, shop in stores for 10-30 minutes, pay bills, count change, handle a savings account and use a checkbook or money orders, read, watch television occasionally and spend time with others weekly. AR 17, 71-72, 141-143, 162-164, 195-197. The ALJ reasonably concluded that Plaintiff's activities suggested that she was not as limited as she alleged. *Valentine v. Comm'r. Social Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009) (that claimant was able to exercise, garden and engage in community activities suggested that he was not as limited as he alleged).

Finally, the ALJ determined that Plaintiff's repeated filings undermined her credibility. AR 17. Without question, this factor does not belong in a credibility analysis, and Defendant appears to concede as much. As Plaintiff points out, the Commissioner's notices informing

claimants of a denial state that they can appeal or file a new claim. Claimants cannot be penalized for following the Commissioner's advice.

Based on the above review, all but one of the ALJ's factors in assessing Plaintiff's credibility were improper. The Court therefore finds that the ALJ's credibility analysis was not supported by substantial evidence and was not free of legal error.

D. Remand

Section 405(g) of Title 42 of the United States Code provides: "the court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing." In social security cases, the decision to remand to the Commissioner for further proceedings or simply to award benefits is within the discretion of the court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded. Where, however, a rehearing would simply delay receipt of benefits, reversal and an award of benefits is appropriate." *Id.* (citation omitted); *see also Varney v. Secretary of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir.1988) ("Generally, we direct the award of benefits in cases where no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed.").

The Court has determined that the ALJ erred in his analysis of the medical opinions and in his analysis of Plaintiff's credibility. Based on the nature of the errors and the Court's review of the medical record, the Court finds that this action should be remanded for further proceedings. First, although the ALJ improperly rejected Dr. McDonald's and Dr. Saindon's opinions, their opinions differ as to whether Plaintiff can perform simple, repetitive tasks. It is not for this Court to determine which opinion should be adopted. Additionally, neither examiner properly quantifies "difficulty." Dr. Saindon states that Plaintiff would have "some difficulty" in various areas and Dr. McDonald simply states that Plaintiff would have "difficulty" in such areas.

The Court therefore finds that this action should be remanded for further review of the medical opinion evidence. If necessary, the ALJ shall obtain additional consultive examinations and further testimony of a VE to assist in making a disability determination. The ALJ shall also re-evaluate Plaintiff's credibility in light of the new analysis.

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is therefore REVERSED and the case is REMANDED to the ALJ for further proceedings consistent with this opinion. The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Dora Gutierrez and against Defendant Michael J. Astrue, Commissioner of Social Security.

IT IS SO ORDERED.

**Dated:  February 27, 2010**          /s/ **Dennis L. Beck**
UNITED STATES MAGISTRATE JUDGE